IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. DWIGHT MOSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-1560 |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | |
| CITY OF PITTSBURGH PUBLIC SCHOOL | ) | Doc. Nos. 3 & 8 |
| DISTRICT and CITY OF PITTSBURGH | ) | |
| BOARD OF PUBLIC EDUCATION, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

LENIHAN, M. J.

Currently before the Court for disposition are Defendants' Motion to Dismiss Plaintiff's

Complaint pursuant to Fed.R.Civ.P. 12(b)(6) (Doc. No. 3), and Plaintiff's Motion for Remand (Doc.

No. 8), in this removal action from the Allegheny County Court of Common Pleas. This lawsuit

involves a challenge to the constitutionality of the Pennsylvania Legislature's recent enactment of

an amendment to the Pennsylvania Public School Code and its application to Plaintiff's employment,

and Defendants' construction of same. Plaintiff alleges that he was summarily and precipitously

terminated from his public employment by Defendants on August 22, 2007, without being afforded

any due process, including a hearing, the right to counsel, adequate notice of the grounds for

termination, or any other appropriate safeguards, in violation of both the Pennsylvania and United

States Constitutions, as well as the Local Agency Law, 2 Pa. Cons. Stat. § 105 and Subch. B of 2

Pa. Cons. Stat. Chs. 5 & 7, and the Pennsylvania Public School Code. Plaintiff seeks relief in the

form of mandamus, a declaratory judgment under 42 Pa. Cons. Stat. Ann. § 7531 *et seq.*, and

damages in the form of lost wages and benefits, interest, and attorneys' fees, costs and expenses.

Defendants removed this case from the Allegheny County Court of Common Pleas to this federal district court on November 15, 2007, after Plaintiffs filed a Second Amended Complaint adding a claim under 42 U.S.C. § 1983. The Court's removal jurisdiction is at issue in this case and Plaintiff has moved for remand to the Court of Common Pleas.

For the reasons set forth below, the Court will deny Defendants' Motion to Dismiss the Complaint, as well as Plaintiff's Motion for Remand.

## I.    FACTS

Plaintiff is Dr. Dwight Mosley, a former employee of Defendant, City of Pittsburgh School District (the "District"). At the time of his termination in August 2007, Dr. Mosley occupied the position of Director of Recruiting & Staffing for the District. (Second Amended Complaint ("SAC") ¶ 1.) Defendant, City of Pittsburgh Board of Public Education ("Board of Education"), is the governing body of the Distirct. (SAC ¶ 3.)

The controversy here arises from an amendment to the Pennsylvania Public School Code ("School Code"), which took effect on July 20, 2007. Essentially, the amendment changed the procedure for terminating management level employees by eliminating the requirement that management employees be given a pre-termination hearing. 24 P.S. § 17-1704.1-B. The amended statute gives the school superintendent authority to recommend to the board of school directors the dismissal of a management employee for unsatisfactory performance or willful misconduct.[1]

Shortly after the amendment to the School Code went into effect, Mosley received a letter from Superintendent Mark Roosevelt on August 21, 2007, informing him that Roosevelt was

---

1. The underscored language suggests, contrary to defendant's contention, that management employees are not "essentially at-will" employees.

recommending his dismissal to the Board of Education pursuant to 24 P.S. § 17-1704.1-B due to unsatisfactory work performance. (SAC ¶ 4.) At its meeting on August 22, 2007, the Board of Education approved Roosevelt's recommended dismissal of Mosley. (SAC ¶ 5.) The next day, the Board of Education sent a letter to Mosley notifying him that the Board approved his termination. (SAC ¶ 7.)

Mosley subsequently instituted the present law suit on September 21, 2007, in the Allegheny County Court of Common Pleas seeking mandamus and declaratory judgment, contending that Defendants failed to afford him due process rights to pre-termination notice and evidentiary hearing, right to counsel and adequate time to prepare a defense. Plaintiff further maintains that his termination amounted to an unconstitutional and improper impairment of vested contractual employment rights under the School Code, Art. I, § 17 of the Pennsylvania Constitution, and Art.I, § 10 of the United States Constitution. Finally, Plaintiff submits that the 2007 amendment to the School Code was unconstitutional on its face and, to the extent applied retroactively, constitutes unconstitutional retroactive legislation. (SAC ¶ 9-10, 16-17.) In addition, Plaintiff seeks an appeal of the Board of Education's decision under Local Agency Law, 2 Pa. Cons. Stat. § § 101, 105 and Subch. B of 2 Pa. Cons. Stat., Chs. 5 & 7, asserting that the decision was an "unlawful and erroneous, arbitrary and capricious 'adjudication'". (SAC ¶ 19.)

On November 5, 2007, Mosley filed a Second Amended Complaint, adding a new count entitled "42 U.S.C. § 1983." (SAC, Count II, ¶¶ 12-14.) In his Section 1983 claim, Mosley is, in essence, asserting the same allegations of fact and constitutional violations raised in his claims for mandamus and declaratory judgment, and in the appeal of the Board of Education's decision under Local Agency Law. Based on the Section 1983 claim asserted for the first time in the Second

Amended Complaint, Defendants removed this case to federal court on November 15, 2007, predicating removal jurisdiction on 28 U.S.C. §§ 1441(a) and 1331. (Defs.' Notice of Removal (Doc. 1), ¶¶ 3-5.) Shortly thereafter, Defendants filed a Motion to Dismiss the Second Amended Complaint it its entirety pursuant to Rule 12(b)(6) on November 28, 2007.

Mosley responded by filing a brief in opposition to the motion to dismiss, as well as a Motion for Remand, on January 15, 2008, requesting that this Court remand the entire case to the Allegheny County Court of Common Pleas. On March 6, 2008, the Court held oral argument on both motions. The motions and responses thereto have been fully briefed and argued, and are now ripe for disposition.

## II.    PLAINTIFF'S MOTION FOR REMAND

Mosley contends that as a threshold matter, the Court must first decide the motion to remand, because lack of jurisdiction would make any decree in this case void and the continuation of the litigation in federal court futile. The Court agrees that the motion for remand must be addressed first.

Section 1441 of Title 28, United States Code, governs the removal of a case to federal court. Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . , to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Boyer v. Snap-On Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010 (3d Cir. 1987) (other citations omitted)); *Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 851 (3d Cir. 1992). Where

4

a motion for remand is filed, the defendant has the burden of proving that removal was proper. *Scanlin v. Utica First Ins. Co.,* 426 F.Supp. 2d 243, 246 (M.D.Pa. 2006) (citing *Boyer,* 913 F.2d at 111).     In removal cases, the existence of federal court jurisdiction is usually determined under the well-pleaded complaint rule, which provides that federal question jurisdiction is established when the face of a properly pleaded complaint asserts a federal question. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987).[2]  In the instant matter, Defendants predicated federal removal jurisdiction on 28 U.S.C. § 1331, in that Plaintiff's Second Amended Complaint asserts a federal civil rights claim under 42 U.S.C. § 1983.  (Notice of Removal, ¶¶ 3-5.) Neither party disputes that Plaintiff's Section 1983 claim asserts a claim or right arising under the Constitution, treaties or laws of the United States, and therefore confers federal jurisdiction in this District Court over this claim.  In addition, this Court has subject matter jurisdiction over the state claims pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).[3]

Nonetheless, Mosley has asked this Court to remand the entire case back to the Allegheny County Court of Common Pleas.  In support, Mosley argues that remand is proper under 28 U.S.C. § 1441(c) because state law issues wholly predominate as to all of Plaintiff's claims.  He further contends that this Court should abstain from exercising jurisdiction and remand the entire case to

---

2.  The well-pleaded complaint rule "makes the plaintiff the 'master of the claim,' meaning that he or she may avoid federal jurisdiction by forgoing federal causes of action and basing the claim on only state law." *Scott v. Sysco Food Serv. of Metro N.Y., L.L.C.,* Civ. A. No. 07-3656 (SRC), 2007 WL 3170121, *2 (D.N.J. Oct. 26, 2007 (citing *Caterpillar,* 482 U.S. at 392 (other citation omitted)).

3.  Section 1367(a) provides, in relevant part, that the district courts, in any civil action over which they have original jurisdiction, "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. §1367(a).

state court under the Supreme Court's decision in *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943).

Each of these arguments is addressed below.

### A.    Remand Under Section 1441(c)

District courts may remand a case to state court only in limited circumstances.  One such

circumstance is codified in Section 1441(c), which provides:

> Whenever a separate and independent claim or cause of action within
> the jurisdiction conferred by section 1331 . . . is joined with one or
> more otherwise non-removable claims or causes of action, the entire
> case may be removed and the district court may determine all issues
> therein, or, in its discretion, may remand all matters in which State
> law predominates.

28 U.S.C. § 1441(c).[4]  Thus, the crucial predicate to granting remand under Section 1441(c) is the

requirement that the federal claim be separate and independent from the non-removable state claims.

*Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 786 (3d Cir. 1995).    The separate and

independent requirement will not be met where there is a "single injury to plaintiff for which relief

---

4.  In addition to Section 1441(c), remand is also authorized under Section 1447(c) if the
removal is procedurally defective, or if subject matter jurisdiction is lacking.  28 U.S.C. §
1447(c). A request for remand based on a procedural defect must be made within thirty (30) days
after filing the notice of removal; otherwise it is waived.  28 U.S.C. §1447(c); *Plevretes v. La
Salle Univ.,* Civ.A.No. 07-5186, 2007 WL 4441220, * 2 (E.D.Pa. Dec. 19, 2007)  (objections to
non-jurisdictional defects in removal procedure are waived if not raised within 30 days after the
filing of the notice of removal (citing § 1447(c); *In re FMC Corp. Packaging Sys. Div.,* 208 F.3d
445, 451 (3d Cir. 2000))).  The Third Circuit has "repeatedly stated that 'an irregularity in
removal of a case to federal court is to be considered 'jurisdictional' only if the case could not
initially have been filed in federal court.'" *Ariel Land Owners, Inc. v. Dring,* 351 F.3d 611, 614
(3d Cir. 2003) (quoting *Korea Exch. Bank v. Trackwise Sales Corp.,* 66 F.3d 46, 50 (3d Cir.
1995)(other citations omitted)).  Thus, remand under Section 1447(c) is not available here as the
motion for remand was filed more than 30 days after the notice of removal, and subject matter
jurisdiction is not lacking.  Also, if a court declines to exercise supplemental jurisdiction over a
state law claim under Section 1367(c) for one of the four reasons set forth therein, the court may
do so through a remand.  *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 357 (1988).
Plaintiff has not based his argument for remand on Section 1367(c), and thus, the Court will not
consider a remand under that section.

is sought, arising from an interrelated series of events or transactions." *Id.* (citing *Am. Fire & Cas. Co. v. Finn,* 341 U.S. 6 (1951)).

In the instant matter, Plaintiff concedes that the separate and independent requirement is not met. Indeed, in his brief in support of his motion for remand, Plaintiff states that his "§ 1983 claim seeks the same relief and arises out of the same facts and alleged wrongful discharge as his mandamus, declaratory judgment, and Local Agency Law Appeal and thus should also be remanded." Pl.'s Br. in Supp. Mot. Remand at 6. From the Court's own review of the Second Amended Complaint, the Court finds that the Section 1983 claim and the state law claims are not separate and independent, but rather, derive from a common nucleus of operative facts. It is clear that all of the claims asserted by Plaintiff attempt to remedy a single wrong–the failure of the Defendants to provide adequate notice and a pre-termination hearing prior to his dismissal. Therefore, since the separate and independent requirement is not met here, the Court does not have the authority to remand under Section 1441(c). *Borough of West Mifflin,* 45 F.3d at 786; *see also Carnegie-Mellon,* 484 U.S. at 354 (holding Section 1441(c) "is not directly applicable to suits involving pendent claims, because pendent claims are not 'separate and independent' within the meaning of the removal statute." (citing *Am. Fire & Cas. Co. v. Finn,* 341 U.S. 6 (1951)).

This infirmity notwithstanding, Mosley submits that Section 1441(c) authorizes the Court to remand the entire matter to state court, because state law predominates as to his state law mandamus, declaratory judgment and local agency appeal claims, as well as the related section 1983 claim, in that all of these claims seek relief entirely under provisions of Pennsylvania law, entirely involve regulation of conduct of Pennsylvania public school district and board in regard to dismissal of public employee, and depend initially upon proper construction to be given to this new

Pennsylvania state law. In making this argument, Mosley would have the Court ignore the separate and independent requirement of Section 1441(c), and instead, focus entirely on the last part of that section which reads "or, in its discretion, [the district court] may remand all matters in which State law predominates." This the Court cannot do. Plaintiff must show that he has satisfied both requirements of Section 1441(c). In addition, although the underlying statute at issue was enacted by the Pennsylvania legislature, Plaintiff's challenge to Section 17-1704.1B of the Pa. School Code implicates *federal* constitutional (due process) rights as well as state constitution rights. Therefore, the Court does not find that state law wholly predominates Plaintiff's claims.[5]

Plaintiff's reliance on *Eastus v. Blue Bell Creameries, L.P.,* 97 F.3d 100 (5th Cir. 1996), and *Burnett v. Birmingham Bd. of Educ.,* 861 F.Supp. 1036 (N.D. Ala. 1994), is misplaced as those cases are clearly distinguishable on their facts. The state law claims in *Eastus* involved state common law, as opposed to the state law claims in the present matter, which involve federal and state constitutional challenges to a state statute. Moreover, the *Eastus* court upheld the remand of the tortious interference claim because plaintiff established both that it was separate and independent from the federal FMLA claim *and* that state law predominated the disposition of the tortious interference claim.[6] In addition, to the extent that Plaintiff argues that *Eastus* stands for the

_____

5. Accordingly, the Court also rejects Plaintiff's argument that the state law claims are not pendent to the federal claim, but are dominant.

6. In *Eastus,* the court of appeals found that the state law claim for tortious interference with prospective contractual relations was separate and independent from the plaintiff's Family Medical Leave Act ("FMLA") claim, and since state law predominated the tortious interference claim, that claim was properly remanded to state court under Section 1441(c). 97 F.3d at 105-07. The court of appeals reversed, however, the district court's order remanding plaintiff's state claim of intentional infliction of emotional distress, holding that the FMLA and emotional distress claims involved a single wrong and substantially similar facts and therefore were not separate and independent. *Id.* at 105. In light of this finding, the court of appeals held that the

proposition that Section 1441(c) authorizes remand of the entire case, including the federal claim, 97 F.3d at 106, the language upon which Plaintiff relies constitutes dicta which is not binding on this Court. The court of appeals in *Eastus* did not consider remand of the federal claim as that claim was not included in the district court's remand order.

In *Burnett,* the issue was whether remand under Section 1441(c) was available given that the case was removed to federal court based on both Section 1331 and Section 1343(a)(3). 861 F.Supp. at 1037. The district court concluded that as long as removal jurisdiction was predicated on Section 1331, it was of no moment that defendant also based removal on Section 1343(a)(3). *Id.* at 1037-38. Having concluded that remand was available under Section 1441(c), the court went on to consider whether remand was appropriate under the facts of the case.[7] The *Burnett* court concluded that a nucleus of operative facts common to the state and federal claims did not exist, and therefore, the state law claims were not pendant to the federal claim, but were dominant. *Id.* at 1039. Accordingly, the court remanded the entire case to state court, including the Section 1981 claim. Unlike the district court's finding in *Burnett,* here this Court has found, and the parties concede, that the state and federal claims attempt to remedy a single wrong and derive from a common nucleus of operative facts. Therefore, *Burnett* is simply inapposite here.

Although the Court recognizes that some authority does exist to support the proposition that

---

district court abused its discretion in ordering the remand of the emotional distress claim under Section 1441(c). *Id.* (citation omitted).

7. The plaintiff's state court complaint included a petition for writ of mandamus, seeking to force the defendant school board and superintendent to pay plaintiffs in accordance with the pay scale allegedly assigned to their job classification, as well as a claim for breach of contract, plus a Section 1983 claim based on an unspecified, alleged violation of their due process rights under the Alabama and U.S. constitutions. *Id.* at 1036-37.

a court may remand the entire case under Section 1441(c), this Court does not even reach that issue since Plaintiff has failed to establish that remand is available under Section 1441(c) in the first instance. Accordingly, the Court concludes that remand is not available under Section 1441(c).

**B.     Abstention Under *Burford v. Sun Oil Co.***

Mosley further argues that this Court should abstain from deciding this case under *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943), and remand the entire action to state court. Generally, *Burford* abstention is appropriate where state law is unclear and "there is a need to defer to complex state administrative procedures." Erwin Chemerinsky, *Federal Jurisdiction,* § 12.2.3 at 802 (5th ed. 2007) ("Chemerinsky"). The scope of *Burford* abstention has been narrowed over the years by several Supreme Court decisions. *Id.* at 804.[8] In *New Orleans Pub. Serv., Inc. v. Council of New Orleans* ("*NOPSI*"), the Supreme Court further refined the standard for determining when *Burford* abstention may be appropriate:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

---

8. *See, e.g., McNeese v. Bd. of Educ. for Community Unit Sch. Dist. 187,* 373 U.S. 668 (1963) (Court rejected a request to apply *Burford* abstention, holding that African American students could bring an action in federal court challenging a segregated school system without initially invoking state administrative procedures); *Zablocki v. Redhail,* 434 U.S. 374, 379 n. 5 (1978) (rejecting abstention and holding that Wisconsin state statute which prevented individuals from obtaining a marriage license if they were not current with child support payments for a non-custodial child did "not involve complex issues of state law, resolution of which would be disruptive of state efforts to establish coherent policy with respect to a matter of substantial public concern.")

491 U.S. 350, 361 (1989) (quoting *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 814 (1976));  *see also Feige v. Sechrest,* 90 F.3d 846, 847 (3d Cir. 1996) (quoting *NOPSI, supra* (other citation omitted)).  In *NOPSI*, the Court went on to explain that "[w]hile *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy."  491 U.S. at 362 (citing *Colorado River,* 424 U.S. at 815-16).[9]  The Supreme Court concluded that abstention was not appropriate in that case, as the Court was not required to:

> inquir[e] beyond the four corners of the [rate-making authority]'s retail rate order . . . to determine whether it is facially pre-empted by FERC's [determination] and relevant provisions of the Federal Power Act.  Such an inquiry would not unduly intrude into the processes of state government or undermine the State's ability to maintain desired uniformity.  It may, of course, result in an injunction against enforcement of the rate order, but "there is . . . no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy."

491 U.S. at 363 (quoting *Zablocki,* 434 U.S. at 380 n. 5).  The Court further held that since wholesale electricity was not bought and sold within a predominantly local market, neither significant familiarity with distinctively local regulatory facts or policies, nor disruption of the state administrative process involving same, would be required and therefore, the principles underlying

---

9.  In *NOPSI,* the state rate-making authority deferred to FERC's implicit finding that the utility's decision to participate in a nuclear power plant venture was reasonable, but found that the costs incurred as a result of utility's participation in nuclear power plant venture should not be completely reimbursed due to the asserted negligence of utility's management in subsequently failing to diversify its supply portfolio by selling a portion of its power.  The utility sought injunctive and declaratory relief from the state rate-making authority in federal court arguing that the rate-making authority's order was preempted by federal law.  The issue before the Supreme Court was whether the district court properly abstained from exercising jurisdiction in deference to the state review process.  491 U.S. at 352-53.

*Burford* were not implicated.  *Id.* at 363-64.

In the most recent decision on *Burford* abstention, *Quackenbush v. Allstate Ins. Co.,* the Supreme Court again emphasized that abstention is only appropriate in rare circumstances:

> [The balance between] the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, [and] the State's interests in maintaining "uniformity in the treatment of an 'essentially local problem,'" and retaining local control over "difficult questions of state law bearing on policy problems of substantial public import," . . . only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an "'extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.'"

517 U.S. 706, 728 (1996) (quoting *NOPSI,* 491 U.S. at 362; *Colorado River,* 424 U.S. at 813-14 (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188 (1959))).

At issue in *Quackenbush* was whether abstention and remand was proper in a suit seeking only money damages.  Although the Court held that abstention and remand were not proper in that case where only money damages were sought, the Court acknowledged that it has not limited abstention to equitable cases, but instead has "extended the doctrine to all cases in which a federal court is asked to provide some form of discretionary relief."  517 U.S. at 730-31 (citing *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 297 (1943); *Samuels v. Mackell,* 401 U.S. 66, 69-70 (1971)); *supra,* at 719 (citing *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 115 (1981) (allowing abstention in mixed case where the recovery of damages under the Civil Rights Act initially required a declaration or determination of the constitutionality of a state tax scheme that would stop its operation); *La. Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 28 (upheld order staying eminent domain proceeding removed to federal court pending adjudication in state court of whether city could exercise power of eminent domain under state law, based on

considerations of comity). The Court specifically noted that it has not held that abstention principles are completely inapplicable in damages actions, opining that *"Burford* might support a federal court's decision to postpone adjudication of a damages action pending the resolution by the state courts of a disputed question of state law." *Id.* at 730-31. Thus, this Court does not read *Quackenbush* as automatically foreclosing *Burford* abstention in a case such as this where both discretionary relief and legal remedies are sought.

Mosley contends that the issues raised in his complaint satisfy the standard delineated in *NOPSI*. According to Mosley, all of his claims hinge initially on the validity and proper construction of 24 P.S. § 17-1704.1-B, which was enacted as part of the Pennsylvania Educational Empowerment Act ("EEA"), 24 P.S. § 17-1701-B *et seq.* Mosley submits that the EEA was enacted to address the needs of certain troubled school districts designated by the Pennsylvania Secretary of Education ("Secretary") as "Commonwealth Partnership School Districts," in part by allowing these Districts greater power to terminate their managerial personnel than other Pennsylvania school districts not so designated by the Secretary. Therefore, Mosley argues, his dismissal clearly raises "'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.'" Pl.'s Br. in Support of Remand at 9 (quoting *Feige,* 90 F.3d at 847). Additionally, Mosley argues that federal interpretation of Section 17-1704.1-B and review of his claims by a federal rather than state court, at a minimum, would "*severely disrupt* and could even *entirely thwart* these objectives, *and* Pennsylvania's efforts to achieve coherent, insulated policies with respect to the power of its school districts over their personnel–*a matter normally reserved to states under their police powers.*" *Id.*

On the other hand, Defendants submit that Mosley's abstention argument fails for two

reasons. First, Defendants argue that since Mosley seeks primarily legal relief in his Second Amended Complaint, under *Quackenbush, Burford* abstention does not apply. Second, Defendants argue that even if *Burford* abstention is not precluded by *Quackenbush*, Plaintiff's Second Amended Complaint does not require an interpretation of "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar nor does it require the exercise of federal review of a question that would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Remand, at 6-7. In support, Defendants submit that Plaintiff's Second Amended Complaint does not request interpretation of difficult questions of state law, but rather, requests a declaration that Section 17-1704.1-B, a state law, violates the U.S. Constitution, either facially or as applied. *Id.* at 7. Therefore, Plaintiff has failed to show that he has met the requirements for *Burford* abstention and this Court should decline to abstain.

The Court finds that *Burford* abstention does not apply to the case at bar. As explained above, this Court does not read *Quackenbush* as completely foreclosing *Burford* abstention where, as here, Plaintiff seeks both discretionary relief as well as money damages. Therefore, *Burford* abstention may be appropriate in this case, but only if Plaintiff can prove one of the two requirements as set forth in *NOPSI*. Unfortunately, Plaintiff has failed to meet this burden.

The Court disagrees with Mosley that resolution of his claims hinges initially on proper construction of Section 17-1704.1-B. No interpretation of Section 17-1704.1-B is required as the statutory language is clear and unambiguous and clearly eliminates the procedural due process otherwise afforded public school employees under the Pennsylvania School Code for management employees. Instead, the Court must determine whether the elimination of procedural due process

14

for management employees in Section 17-1704.1-B violates the Pennsylvania and U.S. Constitutions, as well as 42 U.S.C. § 1983.[10]   In the Court's view, such an inquiry does not appear to raise difficult questions of state law.  Nor would such an inquiry unduly intrude into the processes of state government or undermine Pennsylvania's ability to maintain desired uniformity.

Plaintiff does not offer any explanation on these points other than reciting the standard delineated in *NOPSI*.  He fails to identify the policy problems of substantial import that are implicated, or to explain how such policies will transcend the result in this case. He also fails to articulate exactly how federal review of his claims will "severely disrupt" and "could entirely thwart" the state's objectives in enacting Section 17-1704.1-B.   Moreover, as the Supreme Court explained in *NOPSI,* abstention is not required just because resolution of a federal question may result in the overturning of a state policy.  491 U.S. at 363.  Therefore, given the Supreme Court's admonition that *Burford* abstention is appropriate only in rare circumstances, and Plaintiff has not

10.  In order to make that determination, the Court must resolve two threshold questions:  (1) whether Plaintiff is a management employee as that term is defined under the EEA, and (2) does new Section 17-1704.1-B confer a property right upon management employees? The parties disagree as to whether Plaintiff's job falls within the definition of a management employee under the EEA and as to whether the new statutory language creates a property right for management employees.  The answer to the first question involves a mixed question of law and fact, and therefore, cannot be resolved on a motion to dismiss.  Nonetheless, assuming for purposes of the instant motions that Section 17-1704.1-B does apply to Plaintiff, the statute provides that the new procedures for termination only apply to management employees whose performance is unsatisfactory or where the management employee has been found to have engaged in wilful misconduct.  These two conditions appear to confer a property right in continued employment since one of the specified conditions must actually occur in order for the superintendent to recommend a management employee's termination.  *See Sergi v. School Dist. of City of Pittsburgh,* 368 A.2d 1359, 1362 & n.6 (Pa.Commw. 1977) (implying that employee terminated for one of the reasons enumerated in statute would have a property interest in continued employment); *Lewis v. School Dist. of Philadelphia,* 690 A.2d 814, (Pa.Commw. 1997) (holding non-professional public school employees have a property right in their expectation of continued employment as defined by statute, and therefore when dismissing such employees for cause, the school board must comply with procedural due process safeguards).

shown that he has met one of the requirements under *NOPSI* for abstaining, the Court declines to

abstain from exercising jurisdiction in this case. Accordingly, Plaintiff's motion for remand will be

denied.


III.     **DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Having decided that neither remand nor abstention is appropriate here, the Court now turns

to the merits of Defendants' Motion to Dismiss pursuant to Rule 12(b)(6).

In deciding a motion to dismiss pursuant to Fed.R.Civ.P. Rule 12(b)(6), the Court must

accept as true all allegations of the complaint and all reasonable factual inferences must be viewed

in the light most favorable to the plaintiff. *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939,

944 (3d Cir. 1985) (citations omitted). The Court, however, need not accept inferences drawn by

the plaintiff if they are unsupported by the facts as set forth in the complaint. *See Cal. Pub.*

*Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower*

*Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions

set forth as factual allegations. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007) (citing

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right

to relief above the speculative level." *Id.* (citing 5 C. Wright & A Miller, *Federal Practice &*

*Procedure* § 1216, pp. 235-36 (3d ed. 2004)). Although the United States Supreme Court does "not

require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim

to relief that is plausible on its face." *Id.* at 1974. Thus, a claim will be dismissed under Rule

12(b)(6) if it does not allege "enough facts to state a claim for relief that is plausible on its face."

*Id.*

Recently, the Court of Appeals for the Third Circuit opined as to the impact of the *Twombly* decision on the pleading standard for purposes of a Rule 12(b)(6) motion:

> In light of *Twombly,* Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice, but also the "grounds" on which the claim rests.

*Phillips v. County of Allegheny,* 515 F.3d 224, 232 (3d Cir. 2008) (citing *Twombly*, 127 S.Ct. at 1965 n. 3).[11] Thus, the Court of Appeals concluded that after *Twombly,* it is no longer sufficient to merely allege the elements of a cause of action; rather, *Twombly* requires that the complaint "'allege facts suggestive of [the proscribed] conduct.'" *Id.* at 233 (citing *Twombly*, 127 S.Ct. at 1969 n. 8). In summary,

> "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

*Id.* at 234 (quoting *Twombly,* 127 S.Ct. at 1965).

In deciding motions to dismiss, courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Factual allegations

---

11. Rule 8 requires *inter alia* "a short and plain statement of the claim showing that the pleader is entitled to relief . . .." Fed.R.Civ.P. 8(a)(2). This statement must provide the defendant with fair notice of the plaintiff's claim and the grounds upon which it is predicated. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citation omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* at 512 (citations omitted).

within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id.* A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Defendants assert four arguments in support of their motion to dismiss. Each of these arguments is addressed below.

## A.    Legislative Due Process

Defendants submit that Plaintiff's due process claim should be dismissed under Rule 12(b)(6), in essence, because Plaintiff received all the due process to which he was entitled in the form of legislative due process. In further support of dismissal of this claim, Defendants argue that Plaintiff fails to allege in his Second Amended Complaint that the aim of the new legislation was to specifically target him, that the legislature's actions were arbitrary and irrational, or that the legislative process was somehow defective. Defendants' argument completely misses the mark, as none of these factors is relevant to Plaintiff's procedural due process claim.

In opposition, Mosley argues that where, as here, the challenged new legislation not only apparently impacted and or changed the job status of a class of employees, but also announced an entirely new procedure for dismissal of members of that new class, he may challenge not only whether he falls into that new class, but also the termination of his employment pursuant to that new procedure as a deprivation of property without due process of law. Therefore, Plaintiff maintains that his claims are not foreclosed by "legislative due process."

It is clear that management employees of public school districts designated as Commonwealth Partnership School Districts were not entitled to individual notice and an

opportunity to be heard with regard to the Pennsylvania legislature's *enactment* of Section 17-1704.1-B, as that "legislative determination provides all the due process that is due." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433 (1982) (citing *Bi-Metallic Investment Co. v. State Bd. Of Equalization,* 239 U.S. 441, 445-56 (1915)). That is because the state remains free to amend or eliminate its statutorily created property interests as it deems appropriate. However, "'"[w]hile the legislature may elect not to confer a property interest, . . . it may not constitutionally authorize the deprivation of such an interest, once conferred, without procedural safeguards . . . [T]he adequacy of statutory procedures for deprivation of a statutorily created property interest must be analyzed in constitutional terms.'"" *Logan*, 455 U.S. at 432 (quoting *Vitek v. Jones,* 445 U.S. 480, 490-91 n.6 (1980) (quoting *Arnett v. Kennedy,* 416 U.S. 134, 167 (1974))). The Supreme Court reasoned that "'minimum [procedural] requirements [are] a matter of federal law, [and therefore,] they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action.'" *Id.* (quoting *Vitek,* 445 U.S. at 491).

In the case at bar, Plaintiff is not contending that he was entitled to individual notice and a hearing with regard to the legislative act itself, but rather, is challenging the new procedure specified in Section 17-1704.1-B by the Pennsylvania legislature for terminating management employees of Commonwealth Partnership School Districts, as inadequate under federal and state constitutional law. Plaintiff contends that Section 17-1704.1-B confers a property right, and therefore, he is entitled to procedural due process safeguards prior to termination. To the extent that Section 17-1704.1-B eliminates these procedural safeguards, Plaintiff contends the statute is unconstitutional on its face, and as applied to him. Thus, because it is clear from Plaintiff's factual allegations that

he is not bringing a due process claim with regard to any legislative act, the Court finds that Plaintiff's constitutional due process claims are not precluded by legislative due process, as Defendants suggest.

As noted earlier, the Court has concluded that the new statute does confer a property interest to management employees, as their termination must be for cause, *i.e.,* unsatisfactory performance or wilful misconduct. Yet subsection (c) appears to authorize the deprivation of that property interest without the normal procedural safeguards,[12] contrary to the Supreme Court's admonition in *Logan*. Thus, whether the new termination procedure for management employees set forth in Section 17-1704.1-B is adequate under federal and state constitutional law must be analyzed in light of the specific state interest/public policy for eliminating the pre-termination notice and hearing. However, that determination cannot be made at this juncture.

In further opposition to the motion to dismiss, Mosley takes issue with the following assertions made by Defendants in their supporting brief, for which Plaintiff claims a proper foundation does not exist: (1) Plaintiff's status as a tenured or non-tenured employee; (2) Plaintiff qualifies as a management employee as defined in Section 17-1704.1-B(d)(i); (3) sufficient evidence of his unsatisfactory performance exists; and (4) the School District's designation as a "Commonwealth Partnership School District" by the Secretary of Education.[13] Plaintiff contends these conclusory allegations cannot be credited at this stage of the litigation. As to the first two

---

12. Subsection (c) provides: "The action of the board of school directors in dismissing an employee under [the EEA] shall not be deemed an adjudication under 2 Pa.C.S. Ch. 5 Subch. A (relating to practice and procedure of Commonwealth agencies), nor shall it be subject to a hearing under [24 P.S. §§ 5-514, 11-1125.1 or 11-1122]." 24 P.S. 17-1704.1-B(c).

13. Plaintiff raises this argument in his discussion of the applicable standard and rules for a motion to dismiss under Rule 12(b)(6).

assertions, these facts are disputed and material to the issue of whether Section 17-1704.1-B applies to Plaintiff in the first instance. Contrary to Defendants' argument, it is unclear from the Second Amended Complaint and Plaintiff's job title which category of employee under the Public School Code and the EEA applies to him. Discovery is an appropriate mechanism for flushing out this factual issue. As to the third assertion, evidence of Plaintiff's unsatisfactory performance is not material to the constitutional claims asserted by Plaintiff or to his appeal under Local Agency Law.[14] Finally, as to the assertion that the School District has been designated as a Commonwealth Partnership School District, this is a matter of public record of which the Court may take judicial notice.

Therefore, the Court concludes that Plaintiff has pled sufficient facts under *Twombly* to withstand a motion to dismiss on his claims that Section 17-1704.1-B is both unconstitutional on its face and as applied to him. Accordingly, Defendants' motion to dismiss pursuant to Rule 12(b)(6) will be denied.

### B.    Failure to Comply with Pa.R.Civ.P. 235

Defendants' remaining arguments merit only brief consideration.

Defendants further contend that Mosley has waived his right to raise a constitutional challenge to Section 17-1704.1-B by failing to follow Pa.R.Civ.P. 235 which requires him to notify the Attorney General of Pennsylvania of his constitutional claims. In response, Mosley submits that he has not waived his constitutional rights under Pa.R.Civ.P. 235. He contends that Rule 235 is a

---

14. In all four claims asserted in the Second Amended Complaint, the alleged injury for which Plaintiff seeks redress is Defendants' failure to afford him procedural due process to which he claims entitlement under various Public School Code, Local Agency Law, and the Pennsylvania and U.S. Constitutions. The Second Amended Complaint does not ask this Court to, nor will it, decide whether the Board of Education's action in approving Plaintiff's termination was proper.

procedural rule which does not apply in federal court. Even if the court determines it does apply, Plaintiff argues that Rule 235 only requires that the attorney general be notified, and the court may proceed but order that notice be given as soon as possible. Plaintiff further contends that Rule 235 does not prescribe waiver as a sanction for failure to give notice. In any event, counsel for Mosley has indeed sent a copy of the Second Amended Complaint by certified mail to the Attorney General.

The Court agrees with Plaintiff. Rule 235 does not prescribe waiver as a sanction for failure to give notice and, in fact, gives the court discretion to stay proceedings pending the giving of the notice and allowing the attorney general reasonable time to respond, or the court may proceed without a response from the attorney general. Pa.R.Civ.P. 235. Moreover, the authority cited by Defendants, *Adelphia Cablevision Assocs. of Radnor, L.P. v. Univ. City Housing Co.,* 755 A.2d 703, 709 (Pa.Super. 2000), actually supports Plaintiff's position, holding that a constitutional argument is not waived so long as the party has substantially complied with Rule 235. In *Adelphia Cablevision,* the court noted that the "promptness provision of Rule 235 does not require notification of the constitutional issue the first time the issue is raised at trial." 755 A.2d at 709 (citing *Dranzo v. Winterhalter,* 577 A.2d 1349, 1354 (Pa.Super. 1990)). The defendant in *Adelphia Cablevision* provided the Rule 235 notice to the Pennsylvania attorney general 21 days after it filed a cross motion for summary judgment in which it raised for the first time a constitutional challenge to a provision of the Pennsylvania Landlord and Tenant Act. The trial court was first informed that the Rule 235 notice had been given eight days later when defendant filed a supplemental memorandum in support of its cross motion for summary judgment. 755 A.2d at 707-08, 710. Under those circumstances, the appellate court held that the defendant substantially complied with the notice requirements of Rule 235. *Id.* at 710.

Likewise, in the case at bar, the Court finds that Plaintiff has substantially complied with Rule 235. The Second Amended Complaint was filed on November 5, 2007, and it appears that notice was provided to the attorney general on December 6, 2007, approximately 30 days later. Therefore, the Court finds no merit to Defendants' argument.

### C.    Mootness

Defendants argue alternatively that because Section 17-1704.1-B is valid and clearly applied to Mosley, his claims are all moot. Plaintiff counters that Defendants' mootness argument asks this court to assume the validity of Section 17-1704.1-B, which it cannot do on a rule 12(b)(6) motion. In addition, Plaintiff submits that Defendants do not show that this controversy has been rendered academic by other events.

The Court finds no merit to Defendants' argument. The constitutionality of the termination procedure set forth in Section 17-1704.1-B is precisely at issue in this case. It is far from clear that Section 17-1704.1-B applies to Plaintiff or that it passes constitutional muster. Accordingly, Defendants' mootness argument lacks merit.

### D.    Defendant Board of Education is not a Proper Party

Defendants' final argument is also without merit. Defendants argue that Plaintiff has incorrectly named the City of Pittsburgh Board of Public Education as a Defendant.[15] Defendants contend that the Board of Education is not a proper party because the Board of Education was sued by Plaintiff in its collective "official capacity" and as such, was merely acting for the School District. Defendants cite a number of Supreme Court cases in support of this argument, which are

---

15. Defendants also state that the proper name for the governing body of the School District is Board of Education of the School District of Pittsburgh. Defendants may, of course, move to amend the caption to make this correction.

inapposite here.[16]  Defendants maintain that because the actions of the Board of Education are the actions of the School District, the Board of Education is not a proper party.

In response, Plaintiff submits that the Board of Education is a proper party defendant pursuant to Pa.R.Civ.P. 1094(c), as the Board of Education apparently voted to approve the School District's recommendation to terminate his employment, and it is one of the governmental bodies from which Plaintiff seeks to compel a hearing, among other safeguards.  In support of his argument, Plaintiff cites *Mullen v. Bd. of Sch. Directors of the DuBois Area Sch. Dist.,* 259 A.2d 877 (Pa. 1969), and *Elias v. Bd. of Sch. Directors of the Windber Area,* 218 A.2d 738 (Pa. 1966). Plaintiff also distinguishes the cases cited by Defendants, noting that they all involve Section 1983 claims where individuals were sued in their official capacities and include no discussion about the "collective 'official capacity'" advanced by Defendants.

The Court agrees with Plaintiff.  Pa.R.Civ.P. 1094(c) states, in relevant part: "When a public act or duty is required to be performed by . . . a board or body of a political subdivision, it shall be sufficient to name the department, board, commission or body as the defendant without joining as a defendant the head of the department or the members of the board, commission or body."  The language of Rule 1094(c) clearly allows a "board" of a political subdivision, in this case, the City of Pittsburgh Public School District, to be named as a party in a lawsuit involving an action or duty owed by that board.  In the instant matter, a vote of the Board of Education was required for

_____

16. Defendants cited *Brandon v. Holt,* 469 U.S. 464 (1985); *Hafer v. Melo,* 502 U.S. 21, 27 (1991); and *Kentucky v. Graham,* 473 U.S. 159, 165 ( 1985), all of which involved Section 1983 claims and  acknowledged the general rule that a suit against an individual government official acting in his or her official capacity is really an action against the government entity that the official represents.  Moreover, none of these cases even remotely speaks to the issue currently before the Court.

Plaintiff's termination. Moreover, in the cases cited by Plaintiff, the Pennsylvania Supreme Court allowed mandamus actions against the school boards for their actions in discharging a teacher and school nurses as proscribed by statute. *Mullen,* 259 A.2d at 880-81; *Elias,* 218 A.2d at 742; *see also, Pittenger v. Union Area Sch. Bd.,* 356 A.2d 866, 870 n. 5 (Pa.Commw. 1976) (allowing a mandamus action against school board to require board to modify school calendar to provide 180 days of instruction, and rejecting board's contention that individual members of the board should have been named as defendants, citing Rule 1094(c)).

Accordingly, the Court finds that the Board of Education is a proper party defendant.


## IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Court will deny Plaintiff's Motion for Remand, and will also deny Defendants' Motion to Dismiss pursuant to Rule 12(b)(6).[17] An appropriate order follows.


## <u>ORDER</u>

**AND NOW, this 27th day of May, 2008**, in consideration of Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. No. 3), **it is hereby ORDERED** that said Motion is **DENIED.**

In consideration of Plaintiff's Motion for Remand (Doc. No. 8), **it is further ORDERED** that said Motion is **DENIED.**

_____

17. Because the Court has denied Defendants' motion to dismiss, the Court need not consider Plaintiff's alternative argument that he be allowed to amend his complaint.

By the Court:

LISA PUPO LENIHAN
United States Magistrate Judge

cc:    All Counsel of Record
        *Via Electronic Mail*